ALPHEUS HARDY & others *vs.* INHABITANTS OF YARMOUTH & others.

Under Rev. Sts. *c.* 7, § 10, *cl.* 7, the personal estate of a deceased person is taxable in the town where he last dwelt, until his executors or administrators give notice to the assessors thereof that it has been distributed and paid over to the persons interested therein.

The personal estate of a deceased person which is taxable in the town where he last dwelt under Rev. Sts. *c.* 7, § 10, *cl.* 7, is not taxable in any other town.

Returning a list of trust property to the assessors of a town in which it is not legally taxable does not authorize its taxation therein.

If the trustees of trust property which is taxable to them as the owners thereof, under Rev Sts. *c.* 7, § 9, reside in different towns, the property should be apportioned amongst them, for the purpose of taxation, and the share of each taxed in the town where he resides.

BILL IN EQUITY in the nature of a bill of interpleader, setting forth that the three plaintiffs were the executors and are the trustees appointed in the will of Joshua Sears, late of Yarmouth, deceased; that in said will, in addition to various legacies, the testator gave to Cyrus A. Sears of Boston $10,000, " to be paid to him, $5000 when he shall be twenty-five years old and $5000 when he shall be thirty-five years old; the interest on said sums until payment of the principal is to be paid by my executors and trustees to said Cyrus or his guardian; " that he directed his executors and trustees to pay to Hannah Hamblin of Yarmouth the income of $5000 during her life; that he gave to his executors and trustees $5000 in trust, to pay the income to Olivia R. Sears of Boston during her life; that he gave all the rest, residue and remainder of his estate to the plaintiffs as joint tenants, in trust, to be invested and managed by them, and gave to his son Joshua M. Sears the sum of $30,000, to be paid to him at the age of twenty-one years, and directed all such portions of the income of his estate as might be necessary for the support and education of his said son to be used for that purpose, and, when he should be twenty-one years old, directed $4000 to be paid to him annually, and when he should be twenty-five years old $6000 annually, and when he should be thirty years old $10,000 annually.

The bill further set forth that the plaintiffs accepted the trusts under the will and duly administered the estate, and prior to the 1st of May 1859 settled their accounts as executors and thereafter held the property as trustees; that one of the plaintiffs resides in Dorchester, another in Roxbury, and the third in Boston, and that their place of business as trustees, where all books and papers are kept, is in Boston; that the income of the trust fund is more than sufficient to pay all sums required by the will to be paid annually; that the assessors of the town of Yarmouth have assessed taxes upon all of the personal estate

for the years 1859 and 1860 ; that the assessors of Boston have also assessed taxes upon all said personal estate for the same years ; and that the assessors of Dorchester and Roxbury respectively have assessed taxes upon all or a portion of said personal estate for the same years ; and all of said cities and towns claim and seek to enforce payment of the taxes so assessed by them.

At the trial in this court, before *Dewey,* J., it appeared that the plaintiffs filed their final account as executors in the probate court of Barnstable county on the 31st of March 1859, in which they asked allowance for the sum of $1,478,101.18, carried and charged to trustees' account ; that after due notice this account was allowed on the 17th of the following May ; and on the 12th of April 1861 they gave notice thereof to the assessors of Yarmouth. It also appeared that no taxes were assessed or claimed by Dorchester or Roxbury for the year 1859 ; and that the other facts set forth in the bill were true.

*C. T. Russell,* for the plaintiffs.

*G. Marston,* for the inhabitants of Yarmouth.

*J. P. Healy,* for the city of Boston.

*J. W. May,* for the city of Roxbury.

*A. Churchill,* for the inhabitants of Dorchester.

DEWEY, J. This case presents a question arising between several different towns, each claiming the right to assess taxes upon the personal estate of the late Joshua Sears, of whose estate the plaintiffs were appointed by his will executors and trustees.

The subject of taxation is a matter entirely governed by the statutes ; and such statute provisions, unless in conflict with the constitution, are alone to furnish the rule to be applied by this court in cases like the present. The right of towns to assess taxes upon personal property is to be found in the Rev. Sts. *c.* 7. The general provision is, that all personal estate shall be assessed to the owner in the town where he shall be an inhabitant on the 1st of May. But to this general rule the statute has itself introduced various exceptions. That which particularly applies to the present case is found in § 10, *cl.* 7 : " The

personal estate of deceased persons, which shall be in the hands of their executors or administrators and not distributed, shall be assessed to the executors and administrators, in the town where the deceased person last dwelt, until they shall give notice to the assessors that the estate has been distributed and paid over to the parties interested therein." This provision was particularly designed to meet cases like the present. Under it the authority was clearly given to tax the personal estate of the testator upon its coming into the hands of the executors, and while in their hands as executors, in the town of Yarmouth.

The further inquiry is, when did the right of taxation by Yarmouth under this section of the statute terminate? On the part of the city of Boston, it is urged that this estate was properly assessed in Boston on the 1st of May 1859 and 1860, because it had passed into the hands of the trustees, and therefore it was not liable to be assessed to the executors of the will in Yarmouth. To maintain the right to assess the same in May 1859, the city of Boston rely upon the fact that the executors transferred from themselves as executors to themselves as trustees on their books the amount of all personal estate held by them, and their final account was duly filed in the probate office on the 31st of March 1859. But it appears that there was no final action on the account, or allowance or acceptance thereof by the probate court, until the 17th of May 1859.

In reference to the tax assessed on the 1st of May 1860, the city of Boston relies upon the additional fact that on the 17th of May 1859 the judge of probate allowed a final account of the executors, in which they credited themselves as executors with the transfer of the personal estate to themselves as trustees.

In reference to the tax of 1859 by the city of Boston, the objection is properly taken that the estate had not been legally transferred by the executors until their account had been duly filed, allowed and approved in the probate court. Until that was done, it was only an initiatory step on the part of the executors to make such account; and the *status* of the property, and the liability of the executors to be assessed therefor in Yarmouth,

were not changed. The necessity of a decree of the probate court was directly decided in the case of *Conkey* v. *Dickinson*, 13 Met. 51. It was there held that where the same person is executor and trustee under a will, the funds are to be considered in the hands of the party as executor, unless he has rendered an account in the probate court charging himself as trustee, and that account has been allowed. In the present case, the account was not allowed until after the 1st of May 1859, and this would be quite sufficient as an answer to any claim of right to tax the same in Boston in the year 1859, or to any objection to taxing them in Yarmouth in that year.

The more difficult question arises as to the right of taxation in 1860. Prior to this period, the account of the executors had not only been rendered, but the same had been duly allowed and approved by the probate court. This was a sufficient change and transfer of the property to the trustees to authorize its future taxation to them if there was no other duty required of the executors as a condition precedent to the withdrawal of the property from liability to taxation in Yarmouth. The legislature might have made this change in the mode and place of taxation dependent solely upon the fact of the actual distribution of the estate by the executors, or, as in the present case, upon the transfer by them to themselves in their new capacity of trustees. But they deemed it proper, in fixing the place where and the persons to whom such estate should be taxed, to add the provison that such estate shall be assessed in the town where the deceased person last dwelt, until the executors shall give notice to the assessors that the estate has been distributed and paid over to the parties interested therein.

This provision was a new one, introduced into the Rev. Sts. upon the suggestion of the commissioners to revise the statutes. The object of the provision and the reasons for introducing it are fully stated in the commissioners' report on this chapter. It is there said : " The provision of this section is intended as a practical rule for assessors, who, whatever diligence and care they may exercise, often find that they have assessed property to executors and administrators after it has gone from their hands,

and been distributed among the heirs and legatees. It is suggested that some provision is necessary on this subject to point out the respective duties of the assessors and the representatives of deceased persons." Both the language of the statute and the declared purpose of making this new provision forbid us to give any other construction to it than that of authorizing and requiring the taxation of the personal property of deceased persons in the hands of their executors to continue in the town where the deceased last dwelt, until the executors shall give notice to the assessors of such town that the estate has been distributed and paid over to the parties interested therein. The practical rule provided by the statute is, therefore, for the assessors to continue to assess such estate in the town where the deceased person last dwelt, until the notice required by the statute is actually given to them by the executors. The statute will not admit of the construction that this provision as to notice only applies to that part of the personal estate which has not in fact been distributed. The right of taxation is to continue " until they shall give notice to the assessors that the estate has been distributed."

The phraseology of this statute is somewhat changed by Gen. Sts. *c.* 11, § 12, *cl.* 7 : " The personal estate of deceased persons shall be assessed in the place where the deceased last dwelt. After the appointment of an executor or administrator, it shall be assessed to such executor or administrator, until he gives notice to the assessors that the estate has been distributed and paid over to the parties interested therein." This language is certainly more precise and less open to any question as to its construction than that of the Rev. Sts., but, as we understand it, was not intended to create any change in the existing law, but only to express in a more clear and concise manner the law as it already existed. Although these taxes were assessed under the Rev. Sts., this legislative exposition of the old law, as found in the Gen. Sts. *c.* 11, is proper for our consideration. Such being the statute provision on this subject, we must give it full effect. If greater practical inconvenience results from it than would be found to arise without it, it is for the legislature to repeal or modify it.

That no such notice was given to the assessors of Yarmouth prior to the 1st of May 1860 seems very clear. The filing of an account by the executor in a probate office, and the publication of an order from the probate court appointing a time to act thereon in a public newspaper in the county, followed by a decree allowing such account, are not that notice which the statute requires. Yarmouth being the place where the deceased person last dwelt, under the statute regulating the mode and place of assessing taxes on the personal property of deceased persons, this estate was legally assessed by the assessors of Yarmouth for the years 1859 and 1860.

If it was taxable there, then, upon general principles and the plain policy of the law in relation to taxation, it was not legally taxable elsewhere. The same provisions which authorized its taxation in Yarmouth must operate to defeat the right of the city of Boston to tax the same. The omission of the executors to give the requisite notice to the assessors of Yarmouth does necessarily affect the rights of other towns to assess this property, although in the matter of giving or omitting to give such notice those towns had no control or agency. The like result must follow as to the legal right of the towns of Dorchester and Roxbury to tax this estate in their respective towns in the year 1860, as has been already stated as to the taxes assessed in Boston.

It is said, however, that as to the assessment by the town of Dorchester, certain acts have been done by the trustees that have estopped them from denying their legal liability to be assessed in that town. The precise ground relied upon as an estoppel is, that upon the general notice being given by the assessors of Dorchester to bring in true lists of all their polls and estates not exempted from taxation, Mr. Hardy, one of the trustees, being then a resident of Dorchester, did carry and deliver in to the assessors, as a true list of such property so held as trustee under the will of Joshua Sears, " the sum of one hundred thousand dollars," and assented and requested that the same should be so taxed. The inquiry further is, whether the act thus done by one of the trustees, under the supposition that the property

had ceased to be legally taxable in Yarmouth, and was properly taxable in Dorchester, will operate to subject this estate to double taxation. The question before us, it is to be remembered, is not as to the right to maintain an action by the trustees for the recovery of money voluntarily paid in discharge of a tax thus assessed, which might rest upon different principles. Nor is it the case of an action of trespass brought against the assessors for property wrongfully taken on a tax warrant, as was the case of *Pease* v. *Whitney*, 8 Mass. 93. But it is the question of the legal right to levy a tax, the assessment of which was not warranted by the law regulating taxation, and prescribing the persons to whom and the places where such taxes were to be assessed. The views expressed in the opinion of this court in the case of *Preston* v. *Boston*, 12 Pick. 10, would seem to have a strong bearing on the present question. The tax in that case was assessed upon the plaintiff by the assessors of Boston upon his own request to them to assess a tax upon his personal estate. But he had also been assessed in Medford for the same estate; and, it being made to appear that such estate was legally taxed in Medford, the court held that he was not liable to pay the tax assessed on him in Boston. The court say: " Where there is no legal liability, as where, for instance, an alien or citizen of another state should make such request, it would be no sufficient ground upon which to levy a tax to be enforced by compulsory process. It could be no stronger than a voluntary promise to pay money without legal liability or other good consideration, which upon plain principles of law would not be enforced by legal process." It would be a violation of the great principle applicable to taxation under our statutes, that the same estate cannot be taxed in two different towns in the same year. That a legal liability to be taxed in one town on the 1st day of May 1860 excludes all legal liability to taxation on the same property at the same time in another town, is a principle too fully settled to be called in question. *Field* v. *Boston*, 10 Cush. 65.

In the opinion of the court, although the list delivered to the assessors is to be taken to be a true statement of the property

held by Mr. Hardy as trustee, so far as any question arises upon that point, yet it is not conclusive upon the question whether any tax can be legally assessed therefor; and if an assessment is made upon such property, and payment of such tax is refused upon the ground that the property was not the subject of taxation by the town in which it was thus assessed, but was taxable elsewhere, and that fact is established, the tax so assessed cannot be legally enforced.

Had the proper notice been given to the assessors of Yarmouth of the transfer of the property to the trustees, the court are of the opinion that the tax would have been properly assessed, upon the principle adopted in Dorchester and Roxbury of taxing in each one third of the amount taxable in the hands of the trustees, in case the trustees resided in three different towns.